**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RODOLFO A. CERRITOS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DANIEL MONTI and VONETTA HARRIS,**<br><br>**Defendants.** | **Case No. 3:22-CV-1214-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Rodolfo A. Cerritos, a former inmate of the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 for the alleged deprivation of his Eighth Amendment rights while housed at Centralia Correctional Center ("Centralia"), as well as for state-law claims of negligence. Specifically, Cerritos claims that Defendants were deliberately indifferent to his serious dental needs when they failed to properly treat his toothache associated with his left lower wisdom tooth, delayed treatment, and failed to accurately and urgently respond to complaints about his dental care. (*See* Doc. 60).

Now pending before the Court is a Motion for Summary Judgment filed by Defendants Daniel Monti ("Monti") and Vonetta Harris ("Harris") (collectively, "Defendants"). (Doc. 109). Counsel for Cerritos filed a timely response to the motion. (Doc. 115). Defendants also filed a reply brief. (Doc. 118). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I. Federal Rules of Evidence

The Court first addresses general evidentiary issues raised by the parties' summary judgment briefing.

Defendants object to the additional statements of undisputed material facts stated by Cerritos as the facts are derived from prison grievances and sick call slips and, thus, constitute inadmissible hearsay that fit no exception to the Federal Rules of Evidence. (*See generally* Doc. 118, p. 1, ¶ 20).

While a prisoner's grievances are hearsay when considered for the truth of the matter asserted, the Seventh Circuit has recognized that summary judgment evidence "does not need to be admissible in form; it only needs to be admissible in content." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016). Because the statements contained in a prisoner's grievances are within his personal knowledge and he can testify about them at trial, district courts consider them for summary judgment purposes. *See, e.g., Buchanan v. Bowman*, 829 F. Supp. 3d 489, 494 (S.D. Ill. 2026) (collecting cases).

Here, the statements within Cerritos's grievances and sick call slips are within his personal knowledge, and he is capable of testifying to their contents at trial. Further, the grievances could be admissible for purposes other than the truth of the matter asserted, including to demonstrate that Defendants had notice of his complaints. Therefore, the Court will not disregard them for purposes of summary judgment, and Defendants' objection is overruled.

## II. Undisputed Material Facts

Cerritos was incarcerated in the IDOC between December 4, 2014, and January 25, 2024, during which time he was housed at several IDOC correctional facilities. (Doc. 109-1 at p. 12-14). IDOC housed Cerritos at Centralia from December 23, 2013, until December 1, 2021, when he was transferred to Jacksonville Correctional Center. (Doc 109-1 at p. 13). Cerritos remained at Jacksonville Correctional Center until December 8, 2022, when he was transferred to Southwestern Illinois Correctional Center. (*Id.*). Cerritos was released on January 25, 2024. (*Id.*).

In August 2021, while housed at Centralia, Cerritos began experiencing pain in the lower left side of his mouth and requested dental treatment for his lower left tooth. (Doc. 109-1 at 42). On August 26, 2021, Cerritos was examined by Centralia dental staff and complained primarily of an aching pain in his tooth. (Doc. 109-1 at 42-44; *see* Doc. 109-2). At this visit, Dr. Quang Tran diagnosed Cerritos with a lower left wisdom tooth that needed to be extracted and informed Cerritos that he would be placed on a waiting list to have the extraction performed. (Doc. 109-1 at 45; *see* Doc. 109-2). Dr. Tran further provided Cerritos with a prescription for ibuprofen to help manage the pain. (Doc. 109-1 at p. 45).

Following this initial visit, Cerritos was seen by medical or dental staff at Centralia on several occasions. (*See generally* Doc. 109-1 at p. 45-65). On September 15, 2021, Cerritos filed an emergency grievance related to his dental care. (*See* Doc. 1-1 at p. 13). The Chief Administrative Officer ("CAO") (the Warden) deemed the grievance an emergency and expedited it for review. (Doc. 1-1 at p. 13-14). IDOC staff confirmed that Cerritos was

placed on the waiting list to have his tooth extracted as soon as possible. (Doc. 1-1 at p. 15).

The next day, September 16, 2021, Dr. Tran again saw Cerritos for his wisdom tooth and noted swelling in the gums surrounding the tooth. (Doc. 109-1 at p. 46; *see* Doc. 109-2). Dr. Tran prescribed antibiotics for an infection and continued the pain medication prescription. (Doc. 109-1 at p. 46). Cerritos took both the antibiotic and pain medication as prescribed. (Doc. 109-1 at p. 47). In late September 2021, Dr. Tran reviewed Cerritos's chart and provided another prescription for Motrin. (Doc. 109-1 at p. 48-49).

On October 20, 2021, Cerritos was examined by medical staff at Centralia, who again informed Cerritos that he was on the waiting list for a tooth extraction. (Doc. 109-1 at p. 43; Doc. 109-2). The same day, Cerritos filed a grievance directed to Centralia's health care administrator requesting help in obtaining an extraction of his lower left wisdom tooth. (Doc. 1-1 at p. 18). Staff again informed Cerritos that he was on the waiting list for an extraction and told him to continue taking the medications as directed. (*See id.*). Dr. Tran also provided Cerritos with a prescription for two antibiotics and ibuprofen. (Doc. 109-1 at p. 50).

A week later, Cerritos filed another emergency grievance related to his dental care and continued tooth pain. (Doc. 1-1 at p. 21). In this grievance, Cerritos noted that his tooth had broken, which caused him persistent and pervasive pain in the lower left side of his mouth. (*Id.*). He requested 800mg ibuprofen and antibiotics to help with his pain and so that he could sleep. (*Id.*). The Grievance Officer recommended that the grievance should be "partially upheld" since Cerritos had been given Motrin 400mg and antibiotics,

and the CAO concurred. (*Id.*).

Cerritos returned to the healthcare unit for his tooth on November 2, 2021. (*See* Doc. 109-2 at p. 1). Cerritos described the pain to a nurse as a sharp, throbbing pain in his mouth and rated his pain as nine out of 10. (*Id.*). Cerritos denied experiencing any restriction in jaw movement or any recent trauma to his jaw. (*Id.*). The nurse did not observe any swelling, bleeding, discharge, or foul odor at the time. (*Id.*). The nurse ultimately prescribed him 18 tablets of 200mg ibuprofen to manage the pain. (*Id.*). Following this visit, on November 3, 2021, Cerritos filed a grievance complaining that the delay in extracting the tooth had resulted in multiple infections and the pain medications were not adequately treating the pain. (*Id.* at pp. 26-27). The CAO expedited the grievance as an emergency. (*Id.* at p. 26).

Cerritos filed another grievance on November 11, 2021, stating that his tooth had further broken off and that he was unable to sleep due to the pain. (*Id.* at p. 28). The CAO again expedited this grievance as an emergency. (*Id.*). In response to this grievance, Cerritos was notified by IDOC staff that tooth extractions were not being performed due to COVID-19 protocols. (*Id.* at p. 36).

On November 14, 2021, medical staff again saw Cerritos, noting that his tooth had broken for a second time and that his pain was at a 12 or 13 out of 10. (Doc. 109-2 at p. 4). The nurse prescribed Cerritos 200mg of Ibuprofen, to be taken with a meal three times daily. (*Id.*).

Cerritos wrote additional grievances on November 16, November 18, November 22, and November 23 expressing dissatisfaction with his dental treatment and

complained that the tooth was bleeding and puss was seeping out. (Doc. 1-1 at pp. 32, 34-35, 39, 42). He explained that he had urged dental staff to extract his tooth because of the blood and puss, but they refused. (*Id.* at pp. 34, 35). The CAO expedited each of these grievances as an emergency. (*Id.*).

On January 5, 2022, the Grievance Officer noted that a full-time dentist had started on December 6, 2021, and that appointments for extractions would be made. (Doc. 1-1 at p. 36-37). By this time, however, Cerritos had already been transferred to Jacksonville Correctional Center. (Doc. 109-1 at p. 65). Shortly after his transfer, on January 7, 2022, Cerritos's left wisdom tooth was extracted at Jacksonville. (Doc. 109-2 at p. 10).

A. Defendant Monti

At all relevant times, Monti was the Warden at Centralia. (Doc. 109-1 at p. 72). Cerritos never had personal, face-to-face communication with Monti. (Doc. 109-1 at p. 72-73). Cerritos had previously written to the Warden of the prison, and all of his grievances were reviewed by the Warden. (Doc. 109 at p. 73; *see generally* Doc. 1-1 at p. 13-37).

B. Defendant Harris

Harris was the Assistant Warden of Programs at Centralia from February 2021 through November 2022. (Doc. 113 at ¶ 1). As the Assistant Warden, Harris attested she "provided general oversight of the overall operations of the healthcare unit." (*Id*. at ¶ 3). Harris further attested that she has never received any formal training as a medical or dental provider, and as such she does not provide direct medical care to any individual in custody. (*Id*. at ¶ 2-3). Harris also attested to her understanding that any referral for an individual in custody to be treated by an off-site medical provider must be approved by

a licensed medical or dental professional. (*Id*. at ¶ 4).

Cerritos testified that he sued Harris primarily because she was the acting healthcare administrator as the Assistant Warden at Centralia. (Doc 109-1 at p. 91). Cerritos and Harris engaged in face-to-face conversation on one occasion, during which Cerritos requested Harris's help in obtaining a tooth extraction. (Doc. 109-1 at p. 75). Harris took down Cerritos's name and IDOC number and stated that she would "look into it." (Doc. 109-1 at p. 76).

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). When determining whether a genuine issue of material fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When the moving party establishes the basis for summary judgment, the burden then shifts to the non-moving party who must go beyond mere allegations and offer specific facts establishing there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A moving party is entitled to a judgment as a matter of law when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*.

## DISCUSSION

### I. Deliberate Indifference

Deliberate indifference to serious medical needs of individuals in custody

constitutes the "'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citations omitted). "By prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In order to prevail on an Eighth Amendment claim for inadequate medical care, a prisoner must show that a prison official acted with deliberate indifference to the prisoner's objectively serious medical need. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234-35 (7th Cir. 2021); *see also Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) ("[T]he plaintiff must prove that he suffered from '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'"). "Deliberate means more than negligent, though something less than purposeful." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)); *see also Guiterrez v. Peters*, 111 F.3d 1364, 1370-73 (7th Cir. 1997). A medical condition "need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

To prevail on the subjective prong, a plaintiff must show that a prison official has

subjective knowledge of, and then disregards, an excessive risk to inmate health. *Farmer*, 511 U.S. at 837. "This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Gayton*, 593 F.3d at 620. A plaintiff need not show the individual ignored their complaint, but that the individual knew of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Something more than mere negligence or malpractice is required to prove deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). "An official's failure to alleviate a significant risk that he should have perceived but did not cannot be condemned as the infliction of punishment." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022). Medical malpractice "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Proving deliberate indifference is "a high bar because it requires a showing of something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (cleaned up).

For purposes of summary judgment, the parties do not dispute that Cerritos was suffering from an objectively serious medical need. Therefore, the Court turns to the subjective component: whether Defendants were deliberately indifferent to Cerritos's serious medical condition. Defendants argue that Cerritos's claims fail because there is no evidence that they were personally involved in any alleged violation of Cerritos's constitutional rights. (Doc. 109 at p. 7-8).

A. Defendant Monti

Cerritos claims that Monti was aware of his condition, knew that it was not improving, and acted with deliberate indifference to that condition. Monti moves for summary judgment on the basis that he, as the Warden of Centralia, was not a medical provider and was not authorized to make medical decisions regarding IDOC inmates. Therefore, he lacked sufficient personal involvement in the alleged constitutional violation and cannot be held liable under 42 U.S.C § 1983.

Although Cerritos never had a personal interaction with Monti, the record shows that Cerritos filed nine grievances between September 15, 2021, and November 23, 2021. (*See generally* Doc. 1-1). The grievances described Cerritos's worsening pain, swelling, and bleeding in his tooth and gums as his decaying tooth broke, as well as Cerritos's claim that the prescribed ibuprofen did not alleviate his symptoms. Cerritos also complained that the delay in extracting the tooth had resulted in multiple infections. The Warden expedited each grievance as an emergency.

In arguing that Monti lacked personal involvement, Defendants focus their argument on what *Cerritos* knew, *i.e.*, Cerritos testified he did not know if Monti was the Warden while he was incarcerated at Centralia. That is the wrong inquiry. The relevant question is what did *Monti* know about Cerritos's condition.

"An inmate's correspondence to a prison administrator may [] establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) "Indeed, once an official is alerted to an excessive risk to inmate safety or health through

a prisoner's correspondence, 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.'" *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)). "If investigation into the grievance would make it 'obvious' that the inmate 'might not be receiving adequate care,' then the grievance gives the warden actual knowledge of the condition. *Gevas v. Pfister*, No. 16-CV-10599, 2024 WL 5452703, at *1 (N.D. Ill. June 14, 2024) (quoting *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008)).

Here, a reasonable jury could conclude that Monti, as the Warden and Chief Administrative Officer, had actual knowledge that Cerritos was experiencing worsening pain and infection that was not alleviated by the prescribed medication when he expedited Cerritos's nine grievances in two months as emergencies. Although Monti apparently delegated the job of reviewing grievances to another staff member, since his signature does not appear on the grievance responses, that does not absolve him of responsibility. Indeed, "[b]y delegating the responsibility to review grievances, a warden may effectively consent to or approve of how the grievances are handled." *Dixon v. Brown*, No. 3:16-CV-01222-GCS, 2021 WL 1171657, at *8 (S.D. Ill. Mar. 29, 2019); *see also Drapes v. Hardy*, No. 14-c-9850, 2019 WL 1425733, at *6 (N.D. Ill. Mar. 29, 2019) ("[A]lthough the warden may delegate [the responsibility to review inmate grievances] to others who sign his name for him, the buck still stops at the warden.").

And based on Cerritos's grievances, a reasonable jury could find that Monti violated the Eighth Amendment when he turned a blind eye to Cerritos's inadequate care. A plaintiff does not need to prove that his complaints of pain were literally ignored, rather, he must show only that the defendant's response to it was so plainly inappropriate

as to permit the inference that the defendants intentionally or recklessly disregarded his needs. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Here, Monti's failure to further investigate Cerritos's constant complaints of intense pain and suffering could constitute deliberate indifference.

True, each time Cerritos filed a grievance, the CAO expedited the grievance as an emergency. But a prison official cannot persist in a course of care known to be ineffective. *Petties*, 836 F.3d at 728. And it is clear from the seven grievances Cerritos filed in November 2021 alone that the prescribed ibuprofen was insufficient to deal with his persistent and "overwhelming pain." (Doc. 1-1 at p. 40). The Court therefore finds there is sufficient evidence in the record from which a jury could conclude that Monti knew about Cerritos's dental condition, yet knowingly and recklessly disregarded it. Viewing the evidence in the light most favorable to Cerritos, Monti is not entitled to judgment as a matter of law.

B. <u>Defendant Harris</u>

Harris moves for summary judgment on the basis that she, as the Assistant Warden of Programs, is not a medical provider and is not authorized to make medical decisions regarding IDOC inmates. Therefore, she lacked sufficient personal involvement in the alleged constitutional violation and cannot be held liable under 42 U.S.C § 1983.

As noted above, however, once an official is alerted to an excessive risk to inmate safety or health, the official's refusal to exercise the authority of her office may constitute deliberate indifference. *Perez*, 792 F.3d at 781–82. Cerritos testified that he spoke with Harris on one occasion and relayed his concerns about his treatment to her. (Doc. 109-1

at pp. 74-76). Cerritos testified that he asked Harris if she could help him get his tooth extracted. (*Id.*). Harris asked for his name and IDOC number, which she wrote down, and told him she would look into it. (*Id.*). Based on this evidence, a reasonable jury could find that Harris, the Assistant Warden of Programs who oversaw the healthcare unit, knew about Cerritos's dental condition and turned a blind eye to it when she did nothing further to ensure Cerritos received adequate dental care. Therefore, Harris also is not entitled to summary judgment.

**II. Qualified Immunity**

Defendants next argue that the doctrine of qualified immunity bars any liability for their actions or inactions under 42 U.S.C. § 1983. Defendants argue in a cursory fashion that they are entitled to qualified immunity because the facts here do not rise to the level of a Constitutional violation.

The doctrine of qualified immunity is an affirmative defense that "shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). In reviewing whether a government official is protected by the doctrine of qualified immunity, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right and whether the right at issue was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As discussed above, Cerritos has produced sufficient evidence to establish a violation of his Eighth Amendment right to be free from cruel and unusual punishment. And, as Cerritos argues, that constitutional right has been clearly established since *Estelle* was decided in 1976. *See Estelle*, 429 U.S. at 104 (holding that deliberate indifference to a serious medical condition is akin to unnecessary and wanton infliction of pain and suffering which the Eighth Amendment prohibits). Defendants are not entitled to qualified immunity.

**III. Sovereign Immunity**

Cerritos also asserts state-law negligence claims against Defendants. Specifically, Cerritos claims Defendants owed Cerritos a duty of ordinary care, and Defendants breached their duty of care by failing to notify medical staff that his condition was deteriorating, failing to assist Cerritos in getting additional medical treatment, and failing to respond accurately and urgently to his complaints about his medical care. As a direct and proximate cause of Defendants' negligence, Cerritos argues, he suffered personal and pecuniary injuries, including but not limited to unnecessary pain and suffering, emotional distress, and mental anguish. (Doc. 60, p. 8-10, ¶¶ 34-36, 43-45).

Defendants argue that the Court lacks subject matter jurisdiction because Cerritos's claims are barred by the doctrine of sovereign immunity. (Doc. 109 at p. 12). Specifically, Defendants assert that because their actions with regard to Cerritos's dental treatment were merely a product of their duties as State employees, Cerritos's state law claims are barred by the doctrine of sovereign immunity. (Doc. 109 at p. 14-15). In response, Cerritos argues only that since Defendants are being sued in their individual

capacity, not their official state capacity, sovereign immunity does not bar his state law negligence claims. (Doc. 115 at p. 22).

"When a federal court is exercising supplemental jurisdiction over claims based on state law, the court must apply state law immunities." *Stoker v. Wexford Health Sources, Inc.*, No. 25-CV-00661-SPM, 2026 WL 709710, at *5 (S.D. Ill. Mar. 13, 2026) (citing *Rodriguez v. Cook Cnty.*, 664 F.3d 627, 631 (7th Cir. 2011)). The Illinois State Lawsuit Immunity Act provides that the State of Illinois is immune from suit in federal court for state law claims. 745 ILCS 5/1. Instead, the Illinois Court of Claims has exclusive jurisdiction over state law tort claims against the State. *Frakes v. Warren*, No. 3:23-CV-2963-MAB, 2026 WL 1328219, at *2 (S.D. Ill. May 13, 2026) (citing *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001)). State sovereign immunity extends to claims against state employees, even when they are sued in their individual capacities, when the action is "nominally one against the servants or agents of the State" but "the real claim is against the State of Illinois itself and . . . the State of Illinois is the party vitally interested." *Id.* (quoting *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016)).

An action brought against a state employee is considered one against the State when:

> [T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*T. S. v. Cnty. of Cook, Illinois*, 67 F.4th 884, 892 (7th Cir. 2023) (quoting *Healy v. Vaupel*,

549 N.E.2d 1240, 1247 (Ill. 1990)). "And if an action brought against a state official in his or her personal capacity could operate to control the actions of the State or subject it to liability, it is also considered an action against the state." *Id.* (quotation omitted).

A. Scope of Authority

Whether an employee of the State acted beyond the scope of their authority depends on whether "the employee intended to perform some functions within the scope of [their] authority when committing the legal wrong." *Id.* (quoting *Healy*, 549 N.E.2d at 1247); *see also Jackson v. Alverez*, 831 N.E.2d 1159, 1164 (Ill. App. Ct. 2005).

Monti's actions with regard to Cerritos were, at all times, within the scope of his role as Warden at Centralia. Monti's office was responsible for reviewing Cerritos's grievances, and there is no allegation, much less evidence, that Monti acted outside the scope of his authority. Likewise, Harris acted within the scope of her authority as Assistant Warden of Programs. As Harris attested, she provided general oversight to the healthcare unit at Centralia. There is nothing in the record to suggest that her actions were otherwise outside the scope of her authority.

B. Source of Duty

The Court next examines whether the duty owed to Cerritos arose solely out of Defendants' employment. "Where the alleged wrongful conduct 'arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment,' sovereign immunity bars the action[.]" *Id.* (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)). But "where the employee is charged with breaching a duty imposed on him independently of his state employment, sovereign immunity will not

attach." *Id.* (quoting *Jinkins v. Lee*, 807 N.E.2d 411, 420 (Ill. 2004)).

In this case, the alleged duty that Defendants owed to Cerritos arose solely from their employment at Centralia as Warden and Assistant Warden. Outside of the prison context, neither Monti nor Harris would owe any duty of care to Cerritos. And, as Defendants argue, the alleged violation of the duty of care arises solely from their alleged failure to adhere to their job requirements, not from any duty owed to the public in general. Because the alleged duty owed to Cerritos arose solely from Defendants' employment with the State, sovereign immunity attaches.

C. Official Functions

Finally, the Court asks whether the breach involved matters that are ordinarily within the normal official functions of the state employee. *Healy*, 549 N.E.2d at 1247.

Here, the alleged breach of duty includes Defendants' failure to notify medical staff at the prison that Cerritos's condition was getting worse, failure to assist Cerritos in obtaining medical treatment, and failure to respond accurately and urgently to Cerritos's complaints about his medical care. (Doc. 60, p. 10, ¶ 44; Doc. 60, p. 8, ¶ 35). These matters are all within the normal functions of a Warden and Assistant Warden, who are tasked with providing oversight of the prison facility, ensuring inmates' health and safety, and general administration of the prison's programs. And, at all relevant times, Monti and Harris were acting within their official capacities.

Having analyzed the relevant factors, the Court finds that Defendants acted within the scope of their authority, their actions were within their normal and official functions as Warden and Assistant Warden of Programs, and the source of the duty alleged to be

owed to Cerritos stems solely from their State employment. Therefore, the claims of negligence against Defendants are actually claims against the State of Illinois and are barred by sovereign immunity. Defendants are entitled to summary judgment on Cerritos's state law claims.

## CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendants Daniel Monti and Vonetta Harris (Doc. 109) is **GRANTED in part and DENIED in part**. Defendants are **GRANTED** judgment as a matter of law as to Plaintiff Rodolfo Cerritos's state law negligence claims. Summary judgment is **DENIED** as to Cerritos's deliberate indifference claims.

A status conference to discuss the potential for mediation and to set a firm trial date will be set by separate order.

**IT IS SO ORDERED.**

**DATED: October 8, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**